**PRUDENTIAL OIL & MINERALS COMPANY, a Utah corporation; and Robert Crail and H. M. Scheurn, Appellants,**

v.

**Robert G. HAMLIN, Appellee.**

**No. 6022.**

United States Court of Appeals
Tenth Circuit.

Feb. 3, 1960.

See, also, 261 F.2d 626.

C. M. Gilmour, Salt Lake City, Utah (Dan S. Bushnell, Salt Lake City, Utah, was with him on the brief), for appellants.

Glenn C. Hanni of McBroom & Hanni, Salt Lake City, Utah, for appellee.

Before HUXMAN, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This action was initiated in the state court of Utah by Prudential Oil and Minerals Company to recover from Robert G. Hamlin the sum of $60,000 allegedly due under a contract between these parties for the sale and purchase of uranium mining claims. Hamlin counterclaimed against Prudential, joining the corporate officers Crail and Scheurn, and asserted that he had been fraudulently induced to purchase the uranium claims by the false representations of the individual defendants. He asserted that the claims as represented would have been worth $1,560,000 but were in fact valueless. Because of diversity of citizenship the case was removed to the United States District Court for the District of Utah. There a jury found the issues against the corporate and individual appellants and rendered a verdict in favor of appellee in the amount of $135,000. From this amount the trial court applied an offset of $60,000 admittedly unpaid by Hamlin under the contract of purchase and directed a further remittitur which, when accepted, then resulted in a final

judgment entered for $48,410. This appeal followed.

Appellants attack the judgment below in two regards: Through the indirection of asserting that Hamlin is not the real party in interest in the controversy claim is made that the evidence of damage is legally insufficient to support the verdict. And, secondly, appellants contend that there is no credible evidence that Hamlin relied upon the oral representations of the sellers in making the purchase. We deem neither contention to have merit, the first being unsound in law and the second merely rearguing a question of fact strenuously argued to the jury below and decided by that body adversely to appellants and upon highly disputed and controverted evidence.

On June 26, 1956, Prudential as seller and Hamlin as buyer executed a written contract for the sale and purchase of two groups of mining claims, one located in the Henry Mountain area and one in the Yellow Cat area, Grand County, Utah. The contract recited the consideration thus:

"1. The total purchase price shall be the sum of $35,000 cash and the transfer and delivery of $70,000 worth of stock, computed at par value, of Hamlin Exploration and Mining Company, a Colorado corporation, or such other corporation as may be formed into which all of the above described properties shall be conveyed. It is understood and agreed that the Buyer may assign the above described properties to Hamlin or such other corporation, but it is specifically understood that the stock to be issued to the Sellers shall be stock of the company to which the properties are conveyed and that said $70,000 worth of stock shall not at any time be less than ten percent of the total outstanding stock issued for other properties or services.

\* \* \* \* \* \*

"4. The $70,000 worth of stock to be issued from the company to which the properties are conveyed and in which company said property shall remain until the Sellers are paid in full the cash payment specified herein shall be delivered as soon as the stock has been printed and is available for issue, provided however said stock shall be delivered on or before six months from and after the date hereof. If said stock by said time has not been cleared for sale pursuant to the Securities and Exchange Act of 1933 [15 U.S.C.A. § 77a et seq.] or any regulation or exemption thereto, or said stock does not have an established market for the sale of the stock by the Sellers at said time, the Sellers at their option may demand from the Buyer the sum of $70,000 cash for said stock and the Buyer agrees to pay said amount upon the exercise of the option for said stock. It is understood and agreed that on or before six months from the date hereof said stock shall be negotiable stock and free trading, such that it may be sold by any broker registered with the U. S. Securities and Exchange Commission."

By supplemental written agreement dated August 8, 1956, that portion of the contract referring to the Yellow Cat claims was rescinded by mutual agreement and the consideration reduced to $22,500 cash and $60,000 in stock. Hamlin had, at the time of the execution of the original agreement, paid to Prudential the sum of $10,000 and delivered a postdated check for $7,500. This check was honored at the due date and the remaining $5,000 was subsequently paid by Hamlin. On August 1, 1956, Hamlin had conveyed his interest in the property to the Hamlin Exploration and Mining Company. The Company reconveyed this interest on March 5, 1957, a date after the initiation of the instant action but before the filing of the counterclaim.

We do not deem it necessary to explore the complexities of Hamlin's relationship with the Hamlin Co., a Colorado corporation, its successor, a Nevada corporation, or a so-called subsidiary

named Desert Empire Uranium Company (Colorado), in order to determine whether Hamlin is the real party in interest in the instant action. All representations made by the sellers were made to Hamlin and the contract was executed by Hamlin. If in fact Hamlin owes some obligation to any of these companies it is beyond the orbit of appellant's interest (inferentially recognized by Prudential when that company initiated this suit against Hamlin as an individual) and the procedural problem falls squarely within the definition of "real party in interest" under Rule 17(a), Fed.Rules Civ.Proc., 28 U.S.C.A.:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought * * * ."

It is not claimed that Hamlin ever assigned his cause of action as such and it is admitted that he had, at the time he asserted a claim against Prudential, the same interest in the properties as he obtained at the date of execution of the agreements to purchase. It is then of no import whether the cash consideration paid Prudential moved from Hamlin individually or through him as a conduit for the benefit of another. This latter phrase as contained in Rule 17(a) clearly is applicable to the case and, as Professor Moore indicates in his Federal Practice, Second Edition, sec. 17.13, is so intended. Says Prof. Moore:

"At common law an action on a contract might, and in most cases must, be brought by a party to it. It is clear, therefore, that the person named in this section is a real party in interest. Precisely as in the case of the executor, administrator, guardian trustee of an express trust, the inclusion of the clause under discussion is explained upon the ground of caution. The inclusion was to make clear that a party with whom or in whose name a contract had been made for the benefit of another was not to be deprived of his common law right because another was the beneficial owner, and also to make certain that he need not join the beneficial owner. In accordance with the express wording of the provision 'a party with whom or in whose name a contract has been made for the benefit of another' may sue in his own name, and need not join the third party beneficiary."

 The only other contention made by appellant relative to damages criticizes the Utah rule allowing the "benefit of the bargain" rule in damages for misrepresentation rather than the "out of pocket" rule adopted by the A.L.I. Restatement of the Law of Torts, Sec. 549; See Kinnear v. Prows, 81 Utah 135, 16 P.2d 1094; Pace v. Parrish, 122 Utah 141, 247 P.2d 273; Hecht v. Metzler, 14 Utah 408, 48 P. 37; Beaver Drug Co. v. Hatch, 61 Utah 597, 217 P. 695; Woodmont, Inc., v. Daniels, 10 Cir., 274 F.2d 132. Thus, the jury was permitted to consider profits which Hamlin might have made had the property been as represented and include them in its determination of damages. The appellants urge the merits of the minority rule, but this court has no power to supersede the state law as declared by the highest state court, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

 Finally, appellants point with emphasis to the many acts and statements then made by Hamlin which indicate lack of reliance upon appellants' oral statements relative to the value of the claims. Included among such acts were Hamlin's continued efforts, after discovery of the misrepresentations, to qualify his corporate interests with the Securities and Exchange Commission in order to complete his contract to deliver marketable stock to Prudential. Under Utah law the victim of fraudulent

misrepresentations may complete his contract after discovery of the fraud without either waiving the fraud or showing lack of reliance as a matter of law. Pace v. Parrish, supra; Woodmont, Inc., v. Daniels, supra. And since Hamlin's actions in such regard, together with all other circumstances of the total transaction, were properly submitted to the jury to contrast with Hamlin's contention that he relied upon false representations as to quantity, quality and depth of uranium ore, known to the sellers to be false and intended by them to induce him to buy, we cannot disturb the jury's findings. The evidence permits the verdict and is sufficient in law. Oberg v. Sanders, 111 Utah 507, 184 P.2d 229.

Affirmed.