Jerome A. MAHER and John
R. Gravee, Plaintiffs–
Appellants,

v.

UNITED STATES, Defendant Appellee.

No. 01–5076.

United States Court of Appeals,
Federal Circuit.

Dec. 19, 2002.

John O. Touhy, of Chicago, IL, argued for plaintiffs-appellants.

William G. Kanellis, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Gary J. Dernelle, Trial Attorney.

Before NEWMAN, MICHEL, and PROST, Circuit Judges.

PROST, Circuit Judge.

Jerome A. Maher ("Maher") and John R. Gravee ("Gravee") appeal from the decision of the United States Court of Federal Claims dismissing their complaint for failure to state a claim upon which relief could be granted. *Maher v. United States,* 48 Fed. Cl. 585 (2001). Because Maher and Gravee have failed to allege any set of facts which if true would establish privity of contract with the government, an implied-in-fact contract with the government, or that they were third-party beneficiaries of a contract with the government, we affirm.

## BACKGROUND

This case is a *Winstar*-related case arising from the savings and loan crisis of the 1980's. *See United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). Maher is the former Vice President, Vice Chairman of the Board of Directors, and Chief Financial Officer of Horizon Federal Savings Bank ("Horizon"), a failed mutual savings and loan association. Gravee was Horizon's President, Chief Executive Officer, and Chairman of the Board of Directors. Horizon was formed in 1982 by the merger of First Federal Savings and Loan Association of Wilmette ("Wilmette") with three financially-troubled savings and loan associations. In exchange for Wilmette's taking over these failing thrifts, the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings & Loan Insurance Corporation ("FSLIC") agreed, among other things, to allow Horizon to use the supervisory goodwill created by virtue of the merger as an asset to satisfy its capital requirements and to amortize the goodwill over a period of forty years.

As the directors and principal officers of Wilmette, Maher and Gravee played a large role in negotiating the terms of the merger that formed Horizon. Maher and Gravee allege that as part of these negotiations, the government required them to give up their existing pension plans from Wilmette with the understanding that Horizon could create comparable benefits for them when it became financially stable. In addition, the government allegedly required Maher and Gravee to become the directors and principal officers of Horizon. After these negotiations, Horizon was duly formed upon the execution of three merger agreements in March of 1982, followed by a vote of approval by the board of directors on November 5, 1982. In 1985, Horizon reestablished pension benefits for Maher and Gravee by creating a deferred compensation trust. Horizon established a second deferred compensation trust in 1987. The establishment of these trusts was reflected in employment and compen-

sation agreements between Horizon and the appellants.

On August 8, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989) ("FIRREA"). FIRREA "overhauled the structure of federal thrift regulation" by, among other things, prohibiting the use of supervisory goodwill as an asset to satisfy capital requirements. *Castle v. United States*, 301 F.3d 1328, 1333 (Fed.Cir.2002) (citing *Winstar*, 518 U.S. at 856, 116 S.Ct. 2432). Numerous thrifts, including Horizon, were unable to meet the new requirements of FIRREA. These thrifts were seized by the Office of Thrift Supervision ("OTS") and placed into a receivership directed by the Resolution Trust Corporation ("RTC"), thus "spawn[ing] the *Winstar* litigation, in which the acquirors of ailing thrifts alleged that by enacting and implementing FIRREA, the government breached contracts promising thrifts particular regulatory treatment...." *Castle*, 301 F.3d at 1333.

The OTS declared Horizon insolvent in early 1990, placing Horizon into a receivership directed by the RTC. Maher and Gravee continued as directors and officers until June 1990, when the RTC terminated their employment. They then sought to obtain the proceeds of their deferred compensation trusts, but the RTC ordered the trustee, Harris Bank, not to disburse the trust proceeds. Maher and Gravee subsequently sued Harris Bank, Horizon, and the RTC to recover the proceeds of the deferred compensation trusts. The RTC asserted in defense that the trusts violated certain regulations and counterclaimed for recovery of bonuses paid to Maher and Gravee. After a bench trial, the United States District Court for the Northern District of Illinois ruled in the RTC's favor, finding that the trusts violated 12 C.F.R. § 563.39–1 (1987) and that the bonuses violated 12 C.F.R. § 563.39 (1987). *Maher v. Harris Trust & Sav. Bank*, No. 90–C–5118, 1994 U.S. Dist. LEXIS 17284 (N.D.Ill. Nov. 23, 1994). The United States Court of Appeals for the Seventh Circuit affirmed, noting that while plaintiffs may have vested contractual rights to their deferred compensation, "the property interests plaintiffs acquired as a result of the trusts are void and ... the trust assets will be shared by all persons with proper claims against Horizon." *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1191 (7th Cir.1996).

While Maher and Gravee's appeal was pending at the Seventh Circuit, the RTC sued all of the directors of Horizon, including Maher and Gravee, for breach of fiduciary duty, breach of contract, negligence, and gross negligence in the operation of Horizon leading to losses in excess of $50 million. The "outside directors" (all of Horizon's former directors but for Maher and Gravee, who were "inside directors" because they were the only directors employed by Horizon) counterclaimed for breach of contract and brought a third-party complaint against the OTS in its capacity as successor to the FHLBB, and against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as successor to the FSLIC. Maher and Gravee filed a separate answer to the RTC's complaint, along with counterclaims against the RTC, OTS, and FDIC. On June 23, 1997, pursuant to a settlement agreement, the district court dismissed the pleadings involving the outside directors and, at the same time, transferred the counterclaims of Maher and Gravee to the Court of Federal Claims. Maher and Gravee then filed an Amended Complaint at the Court of Federal Claims on February 26, 1998, naming the United States as a defendant, acting through the RTC, OTS, and FDIC.

The government moved to dismiss the Amended Complaint, arguing that the claims were time barred, the transfer was improper, the court lacked subject matter jurisdiction, and Maher and Gravee failed to plead a claim for which relief could be granted. The Court of Federal Claims granted the motion to dismiss, stating:

> Contracts are formed through an exchange of promises—through commitments to act or refrain from acting in a specified way—that are evidenced in a writing or are inferable from conduct. We have neither writing nor conduct here. Plaintiffs were not parties to the Government's supervisory merger agreement with the bank, they cite no language in that agreement supportive of the promises they now allege, and they reference no course of dealing between the parties from which the existence of such promises might reasonably be inferred. Rather, the whole of plaintiffs' case rests on the naked proposition that, by entering into a contract with the bank, the Government entered into a contract with them as well or, alternatively, that as part of its contract with the bank, the Government also assumed special commitments for their benefit. The argument cannot succeed.

*Maher,* 48 Fed. Cl. at 586.

Maher and Gravee appeal the dismissal of their complaint. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

█ We review "*de novo* whether the Court of Federal Claims possessed jurisdiction and whether the Court of Federal Claims properly dismissed for failure to state a claim upon which relief can be granted, as both are questions of law."

*First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1286–87 (Fed.Cir.1999) (quoting *Wheeler v. United States,* 11 F.3d 156, 158 (Fed.Cir. 1993)). "A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where the plaintiff cannot assert a set of facts which would support its claim." *Mitchell Arms, Inc. v. United States,* 7 F.3d 212, 215 (Fed.Cir. 1993). In its analysis, this court "accept[s] the plaintiff's factual allegations in the complaint as true, drawing all inferences in favor of the plaintiff." *Ponder v. United States,* 117 F.3d 549, 552 (Fed.Cir.1997).

According to Maher and Gravee, the

> gravamen of their ... complaint is that the government acting under and through its agencies, whether it be the OTS, the RTC or FDIC, breached its contractual obligations to Horizon and thus to Maher and Gravee by changing the regulatory framework under which the government had initially induced Horizon to merge with several failed thrift institutions in the early 1980's.

Maher and Gravee state that their claim "can be characterized as promissory estoppel, it can be characterized as third-party beneficiary contract, it can be characterized as direct contract, it can be characterized as implied-in-fact contract, induced reliance or whatever." Notwithstanding appellant's nebulous characterization of their case, we understand the Amended Complaint and the parties' arguments as raising two distinct issues: whether Maher and Gravee are third-party beneficiaries of a contract between Horizon and the government and whether they have an implied-in-fact contract with the government.[1]

---

1. The parties also debate whether Maher and Gravee have privity of contract with the government. *See Erickson Air Crane Co. of Wash.* *v. United States,* 731 F.2d 810, 813 (Fed.Cir. 1984) (stating that "the government consents to be sued only by those with whom it has

## I

■ The starting point for our analysis is the Supreme Court's holding in *Winstar*: "Although Congress subsequently changed the relevant law [by enacting FIRREA], and thereby barred the Government from specifically honoring its agreements, we hold that the terms assigning the risk of regulatory change to the Government are enforceable, and that the Government is therefore liable in damages for breach." *Winstar*, 518 U.S. at 843, 116 S.Ct. 2432. The *Winstar* case thus recognized a contract between the government and certain failed thrifts based on the government's promise to provide certain regulatory forbearances.

Maher and Gravee claim that they are the intended third-party beneficiaries of such a contract between the government and Horizon. Specifically, the Amended Complaint alleges that

> Petitioners each were intended beneficiaries of Respondents' contractual agreement with Horizon to recognize Horizon's supervisory goodwill for a period of 40 years.... [I]n December 1989, Respondents breached their contractual obligations to Horizon and to Petitioners by refusing to recognize Horizon's supervisory goodwill, which at the time exceeded $100 million, to satisfy Horizon's capital requirements.

According to the Amended Complaint, the government's breach caused Horizon to become insolvent, which also "directly and proximately caused Horizon to breach its contractual obligations to Petitioners by terminating their employment." On ap-

peal, Maher and Gravee argue that they are intended third-party beneficiaries of the merger agreement because the government intended for the merger to provide certain benefits to Maher and Gravee, such as their employment as directors and officers, in order to induce them to agree to the merger. They also argue that the government required them to give up their existing pension plans with Wilmette as a prerequisite to the merger, with the understanding that Horizon could reestablish comparable plans once it was financially stable.

Even accepting these allegations as true, Maher and Gravee do not meet the definition established by this court's precedent for intended third-party beneficiaries. Two recent opinions from this court address the issue of who qualifies as a third-party beneficiary of a *Winstar*-type agreement between the government and a failed savings and loan. *Castle*, 301 F.3d at 1337–39; *Glass v. United States*, 258 F.3d 1349, 1353–55 (Fed.Cir.2001), *amended on reh'g*, 273 F.3d 1072 (Fed.Cir.2001). In *Glass*, the principal stockholders of Sentry Mortgage Corporation ("Sentry") agreed to purchase a financially troubled thrift, Security Savings, in exchange for favorable regulatory treatment from the FHLBB and FSLIC, including allowing Security Savings to use supervisory goodwill as an asset to meet its regulatory capital requirements. *Glass*, 258 F.3d at 1352. After the enactment of FIRREA, Security Savings became insolvent and was liquidated by the RTC. The former shareholders of Security Savings claimed that

privity of contract"). Maher and Gravee can establish privity of contract through an implied-in-fact contract with the United States, or by establishing that they are intended third-party beneficiaries of a contract with the United States. *See First Hartford Corp.*, 194 F.3d at 1289. Thus, whether Maher and Gravee have privity of contract with the govern-

ment turns on our resolution of the implied-in-fact contract and third-party beneficiary issues. In addition, the government makes the alternative argument that the Amended Complaint is barred by the statute of limitations. We note that the Court of Federal Claims did not reach this issue and, in light of our disposition in this case, neither do we.

the government breached its agreement to allow Security Savings to amortize supervisory goodwill over a period of twenty-five years. According to the shareholders, they were third-party beneficiaries of this agreement because the government knew that the shareholders were the true parties in interest. Similar to the arguments made by Maher and Gravee, the shareholders argued that the government induced them into agreeing to the merger by promising regulatory forbearances. *Id.* at 1354. We held that the shareholders were not third-party beneficiaries of any contract between the FSLIC and FHLBB on the one hand, and Security and Sentry on the other. *Id.* In particular, we stated:

> In order to prove third[-]party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly. Third[-] party beneficiary status is an "exceptional privilege" and, to avail oneself of this exceptional privilege, a party must "at least show that [the contract] was intended for his *direct* benefit."

*Id.* (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912)). Because the shareholders did not stand to benefit directly under the contract, we found that they were, at most, incidental beneficiaries of the contract. *Id.* at 1355.

In *Castle v. United States*, two individuals, Castle and Harlan, owned a merchant banking firm that merged with Western Empire, a financially-troubled thrift. 301 F.3d at 1333–34. According to Castle and Harlan, "they agreed to acquire and recapitalize Western Empire, and ... in exchange, the Bank Board and FSLIC promised to afford Western Empire special regulatory treatment." *Id.* at 1334. Castle and Harlan personally contributed

$500,000 to the recapitalization of Western Empire; other shareholders contributed an additional $14.6 million. After the enactment of FIRREA, Western Empire was placed into receivership for failure to comply with the new capital maintenance requirements. *Id.* at 1335. The shareholders then sued the government, alleging that the passage of FIRREA caused a breach of contract and Fifth Amendment taking of property. We concluded that only Castle and Harlan had standing to sue for breach of contract because only they signed any document constituting an alleged contract. *Id.* at 1337. The remaining shareholders did not have standing to sue and were not intended third-party beneficiaries "because their sole benefit under the alleged contract was in their capacity as shareholders of Western Empire." *Id.* "Nothing suggest[ed] that the government made any promises, contractual or otherwise, that were expressly intended to benefit the shareholders personally, independently of their status as shareholders of Western Empire." *Id.* We also concluded that the enactment of FIRREA did not constitute a taking under the Fifth Amendment. *Id.* at 1341–42.

Based on the holdings of *Castle* and *Glass*, it is clear that Maher and Gravee are not intended third-party beneficiaries of the merger agreement. Maher and Gravee have not pled any facts suggesting that the merger agreement was entered into for the purpose of benefiting them directly. Nor have they pled or established that the government took on any obligations in the merger agreement for their personal benefit, or even that the merger agreement contains any provisions pertaining to them personally. Rather, from what we can discern from the parties' briefs and the record before us, any promises the government may have made to Maher and Gravee regarding their continued employment and replacement of pen-

sion benefits were allegedly made during negotiations for the merger; such promises are not found in the merger agreement itself. To the extent Maher and Gravee had certain expectations from these negotiations regarding their employment and pension benefits, these expectations are reflected in their employment agreements with Horizon, not the merger agreement. Granted, the merger agreement may have been a necessary instrument for Maher and Gravee to become directors of Horizon-because without the merger agreement Horizon would not exist-but at best, this would make Maher and Gravee "incidental beneficiaries of the contract with no rights to enforce the contract against the United States." *Glass,* 258 F.3d at 1355; Restatement (Second) of Contracts § 302(2) ("An incidental beneficiary is a beneficiary who is not an intended beneficiary.").

In short, Maher and Gravee have not shown that the merger agreement "reflects an intention to benefit [them] directly." *Glass,* 258 F.3d at 1354. We therefore conclude that Maher and Gravee have not pled, and could not plead, sufficient facts to establish that they are intended third-party beneficiaries of a contract between Horizon and the government.

## II

Maher and Gravee also argue that they have an implied-in-fact contract with the government by virtue of promises they were given "directly by the Federal Government which were relied upon at the beginning of the merger talks and throughout the entire continued administration and management of [Horizon] up until the time of the takeover by the RTC." According to Maher and Gravee, the government promised (and even required) that they would be the directors of Horizon, and that they must give up their

existing pension plans from Wilmette with the understanding that Horizon would later establish comparable plans once it was financially stable.

■ An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules, Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (quoting *Balt. & Ohio R.R. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). While an implied-in-fact contract may be inferred from the parties' conduct, the required elements for contract formation—"a mutual intent to contract including an offer, an acceptance, and consideration"—are the same for express and implied-in-fact contracts. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997). In addition, when trying to establish an implied-in-fact contract with the government, the complaint must allege that the government's representative had the authority to enter into the alleged contract. *Cf. Sommers Oil Co. v. United States,* 241 F.3d 1375, 1380 (Fed.Cir.2001) (finding that it "was sufficient for the complaint to allege that the government's promise was authorized by a person having legal authority to do so").

■ Nothing indicates that the government promised, or even could have promised, to provide Maher and Gravee with employment and pension benefits. Instead Horizon, not the government, was responsible for employing Maher and Gravee and creating their new pension plans, which were in the form of deferred compensation trusts. Thus, any promises of employment and pension benefits arose directly from Maher and Gravee's employ-

ment contracts with Horizon, not through an implied-in-fact contract with the government.[2] Moreover, the Amended Complaint fails to plead the requisite elements of a contract with the government for employment and pension benefits. The government's alleged promises identified in the Amended Complaint instead relate only to the regulatory treatment of Horizon, as does any alleged breach. According to the Amended Complaint, "[b]y virtue of [the government's] breach of their promises as set forth above [regarding certain regulatory treatment], Respondents also directly and proximately caused *Horizon* to breach its contractual obligations to petitioners by terminating their employment, thereby resulting in financial losses to Petitioners well in excess of $1,000,000" (emphasis added). Thus, the Amended Complaint makes clear that Horizon, not the government, allegedly contracted with Maher and Gravee to provide employment and pension benefits. We conclude that the Amended Complaint fails to allege facts that, if proven, would establish that Maher and Gravee had an implied-in-fact contract with the government for these same benefits.

## CONCLUSION

The Amended Complaint in this case does not establish a cause of action against the government for Maher and Gravee's termination of employment by Horizon or for payment of the proceeds of the deferred compensation trusts. Maher and Gravee have not pled sufficient facts to establish that they are intended third-party beneficiaries of the merger agreement between the government and Horizon, or that they have an implied-in-fact contract with the government for employment and pension benefits. We therefore affirm the Court of Federal Claims' dismissal of the Amended Complaint.

*AFFIRMED.*

2. To the extent Maher and Gravee have a claim for breach of their employment contracts, including a claim for payment of the proceeds of the deferred compensation trust, established for them by Horizon, such a claim would be directly against Horizon through its receiver, not indirectly through the government. Maher and Gravee made a failed attempt at such a claim more than ten years ago when they sued Harris Bank, Horizon, and the RTC. *See Maher,* 75 F.3d at 1187, 1190–91. Moreover, under FIRREA, persons having claims against the assets of a thrift are subject to the administrative claims review process prescribed by 12 U.S.C. § 1821(d). The government argues that Maher and Gravee have failed to timely follow these procedures; Maher and Gravee argue otherwise. This issue is not framed by the Amended Complaint and is not properly before us on appeal.