**FIFTH THIRD BANK OF WESTERN OHIO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–503C.**

United States Court of Federal Claims.

Feb. 10, 2003.

Alan M. Grimaldi, Washington, DC, for plaintiff, with whom was Robert M. Bruskin, Timothy K. Armstrong, Alexander B. Berger, and Jennifer R. Bagosy. Tina Woods, Fifth Third Bank of Western Ohio, of counsel.

David A. Levitt, Washington, DC, for defendant, with whom was Deputy Assistant Attorney General Stuart E. Schiffer. Brian A. Mizoguchi, Jr., Jonathan S. Lawlor, John H. Roberson, and Gregory R. Firehock, of counsel.

1. Citizens merged into plaintiff on August 14, 1998. Prior opinions refer to "Citizens" and "plaintiff" interchangeably because their separate identity was not integral to the issues addressed. This opinion distinguishes the two.

***OPINION***

MILLER, Judge.

Seven years after the filing of the complaint in this *Winstar* case, defendant, for the first time, contends that plaintiff lacks standing, and is not the real party in interest or the proper party to bring this litigation. Plaintiff has cross-moved for partial summary judgment on these three issues. Argument is deemed unnecessary.

### FACTS

The facts relating to this motion are discussed in this court's previous opinion on Plaintiff's "Short–Form" Motion for Partial Summary Judgment on Liability and Defendant's Motion for Summary Judgment, *see Fifth Third Bank of Western Ohio v. United States,* 52 Fed.Cl. 264 (2002) (*"Fifth Third* 1"), and the court's opinion granting, in part, defendant's motion for summary judgment on damages issued this date. Consequently, only a brief recapitulation of the undisputed facts integral to the issues of real party in interest, standing, and indispensable party is recited below.

Fifth Third Bank of Western Ohio ("plaintiff") is the successor-in-interest to Citizens Federal Bank, F.S.B. ("Citizens").[1] Between 1982 and 1985, Citizens, a federally chartered mutual savings and loan, entered into several supervisory mergers with failing thrifts in southern Ohio,[2] in exchange for special regulatory accounting treatment approved by the Federal Home Loan Bank Board (the "FHLBB"). This treatment, created to alleviate the growing savings and loan crisis of the 1980's, allowed the "supervisory goodwill" created by the mergers to be counted towards the acquiring thrift's capital requirements and to be amortized over a fixed period of time. The supervisory mergers in this case were approved by the Cincinnati Federal Home Loan Bank (the "FHLB–Cincinnati"), a branch of the FHLBB.

2. *See Fifth Third* 1 at 265 for a full listing of the financial institutions acquired by or merged into Citizens.

When the new accounting methods failed to stem the growing thrift crisis, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"), which was signed into law on August 9, 1989. FIRREA replaced the FHLBB with the Office of Thrift Supervision (the "OTS"). It also created a new thrift deposit insurance fund under the Federal Deposit Insurance Corporation (the "FDIC") and established the Resolution Trust Corporation (the "RTC"), charged with liquidating or otherwise disposing of failing thrifts. Most importantly, FIRREA required thrifts to maintain core capital reserves totaling no less than 3% of the thrift's assets and prohibited counting unidentifiable intangible assets, such as supervisory goodwill, towards this capital requirement.

After FIRREA's enactment, the OTS required Citizens to submit a capital restoration plan proposing how it intended to conform to FIRREA's capital requirements. After rejecting the first two plans submitted by Citizens, the OTS, on September 25, 1990, approved Citizens' third submission. The plan included two commitments: First, Citizens would sell its Cincinnati division; second, it would convert from a mutual to a stock form. Plaintiff completed the sale of the Cincinnati division in June 1991 and consummated its conversion from a mutual to a stock institution on January 29, 1992. To effect the conversion, plaintiff claims that Citizens amended its charter to authorize the issuance of common stock.[3] A holding company, CitFed Bancorp, Inc., then purchased all of the common stock, which, in turn, was first offered to Citizens' depositors, thereafter to its directors, officers and employees, and finally to the general public. In order to conform with federal regulations, a liquidation account was created for the benefit of depositors concurrent with the conversion of Citizens into an equity company.[4]

On August 4, 1995, Citizens filed a complaint in the United States Court of Federal Claims, seeking breach of contract damages arising out of the supervisory transactions and alleging a taking of its contractual rights.[5] In 1998 plaintiff acquired Citizens, and the court granted plaintiff's motion on October 1, 1998, for substitution of plaintiff in this litigation.

On August 12, 2002, defendant filed its answer to plaintiff's amended complaint which raised, for the first time, the affirmative defense of lack of standing. Answer filed Aug. 12, 2002, ¶ 98. In response to the court's order allowing defendant to file one final dispositive motion on damages issues only, Order entered Aug. 21, 2002, ¶ 3, defendant filed on September 18, 2002, its Motion To Dismiss for Failure To State a Claim Upon Which Relief May Be Granted and Motion for Summary Judgment on Damages. This motion, *inter alia*, challenged plaintiff's standing to bring its breach claim, as defendant argued that only the pre-conversion depositors were harmed by the enactment of FIRREA and that plaintiff had not purchased the right to bring suit. Defendant's motion obviously ignored the court's previous directive, and the court separated the motion on damages by ordering plaintiff at present to respond only to that issue. Order entered Sept. 27, 2002, ¶ 1.

Plaintiff responded accordingly, filing an opposition to defendant's motion on November 1, 2002, that did not address the standing issues. Defendant filed its reply on November 18, 2002, quixotically arguing that the court had authority to grant its motion to dismiss in light of plaintiff's failure to respond to defendant's lack of standing argu-

---

3. Defendant disputes that Citizens amended its charter to allow the creation of common stock. Rather, it claims that Citizens cancelled its charter and applied for and received a stock charter from the OTS. The dispute over Citizens' charter is not material to the court's resolution of the three issues raised in the cross-motions.

4. As the liquidation account is crucial to the resolution of all three issues in contention, it is discussed in detail *infra* section 2.

5. The Supreme Court has concluded that the documents executed between government regulators and acquiring thrifts in connection with supervisory mergers may constitute enforceable contracts. *United States v. Winstar Corp.*, 518 U.S. 839, 859–60, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

ment. Def.'s Br. filed Nov. 18, 2002, at 8 n. 7. Defendant, however, also acknowledged that, due to its importance, the standing issue might necessitate a reply from plaintiff and that defendant did not object to a supplemental brief from plaintiff addressing the issue.[6] *Id.* The court determined that plaintiff's standing must be resolved before trial. *See* Order entered Jan. 6, 2003. Plaintiff then cross-moved for partial summary judgment on the issues of real party in interest, standing, and proper party.

## DISCUSSION

### 1. *Standards for failure to state a claim and for summary judgment*

Defendant has moved to dismiss plaintiff's complaint, under RCFC 12(b)(6), for failure to state a claim upon which relief may be granted based, *inter alia*, on plaintiff's lack of standing. When a federal court reviews the sufficiency of the complaint for failure to state a claim, " 'its task is necessarily a limited one.' " *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The Federal Circuit adheres to "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.2002). Under RCFC 12(b)(6), the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must construe all reasonable inferences in favor of the non-movant, *Som-*

*mers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001). Therefore, this court must deny a motion under RCFC 12(b)(6) if relief can be granted " 'under any set of facts that could be proved consistent with the allegations.' " *NOW, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Plaintiff has cross-moved for partial summary judgment as to the issues of real party in interest, standing, and proper party. RCFC 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001).

### 2. *Liquidation account*

Both parties' motions hinge on the legal significance of the liquidation account created upon the conversion of Citizens from a mutual to a stock thrift. It is undisputed that Citizens was under a legal duty to create a liquidation account when converting to an equity company, in order to preserve the pre-conversion depositors' entitlement to obtain a share of the institution's net worth upon liquidation. *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1185 (7th Cir. 1993). A liquidation account is funded "in an amount equal to the amount of net worth of the converted savings association as of the latest practicable date prior to conversion." [7] 12 C.F.R. § 563b.3(f)(1) (2002). As the pre-conversion accounts are drawn down, "the liquidation account is correspondingly diminished." *Ordower*, 999 F.2d at 1185.

---

6. Although plaintiff included a brief discussion of the standing and related issues in its January 6, 2003 Memorandum of Contentions of Fact and Law Regarding Liability and Related Issues, the court has not considered it as a response to defendant's motion.

7. In calculating its net worth for the purpose of determining the value of the liquidation account, the converting thrift must use the "net worth figure no later than that set forth in its latest statement of financial condition contained in the final offering circular." 12 C.F.R. § 563b.3(f)(1).

Because plaintiff purchased Citizens after it became an equity company, defendant challenges plaintiff's standing to bring the breach claim. Defendant maintains that the right to bring the breach of contract suit is held by the pre-conversion depositors only and that plaintiff did not obtain the right to sue because it purchased only the rights held by Citizens, the stock corporation, not the rights held by the depositors, as reflected in the liquidation account. Moreover, it argues that the depositors were not separately compensated for their collective right to bring suit, and that the Government, not plaintiff, is the successor to the depositors' breach claim. Thus, defendant regards plaintiff as nothing more than a constructive trustee for the liquidation account, because only the pre-conversion depositors of Citizens have standing to sue and are the proper parties to bring this litigation.

Plaintiff responds that it has obtained the right to bring suit because Citizens was in privity of contract with the Government and points to the inconsistency of defendant's current standing argument vis-à-vis its argument in other *Winstar* cases that only signatories to the supervisory merger agreements have standing to bring a breach claim. According to plaintiff, the depositors have no interests at stake in this litigation, defendant has waived the real party in interest argument, and no other indispensable parties must be joined.

### 3. *Real party in interest*

Defendant argues that plaintiff is not the real party in interest in this litigation because plaintiff is suing for an injury incurred by the pre-conversion depositors. Defendant relies on *Castle v. United States,* 301 F.3d 1328 (Fed.Cir.2002), and *Statesman Savings Holding Corp. v. United States,* 41 Fed.Cl. 1 (1998), as supporting the propositions that a party may enforce only a right it possesses and may not sue upon an injury suffered by another.

Although these cases do stand for the legal principles cited by defendant, plaintiff rejoins that defendant has waived the right to make this argument. Defendant was on notice as of 1995, the year the complaint was filed, that

plaintiff intended to bring a breach claim. The parties engaged in discovery and filed numerous dispositive motions over the course of seven years and are prepared for trial; yet defendant gave no indication that it considered plaintiff an improper party until it raised the standing issue in August 2002. Defendant knew, from the beginning of this litigation, of Citizens' conversion from a mutual to a stock company in 1992. Compl. filed Aug. 4, 1995, ¶ 7.

The defense that a party is not the real party in interest, unlike standing, does not implicate jurisdictional requirements, *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed. Cir.1999), so the issue is subject to waiver if not timely pled, *Rogers v. Samedan Oil Corp.,* 308 F.3d 477, 483–84 (5th Cir.2002) (real party in interest defense waived when brought on "eve of trial"); *United Health-Care Corp. v. American Trade Ins. Co.,* 88 F.3d 563, 569 (8th Cir.1996) (real party in interest defense waived when raised two years after receiving notice of issue). Defendant advances the perplexing argument that it has not waived this defense because its answer was timely filed pursuant to the amended scheduling order. It also contends that, because the issue of real party in interest is "closely intertwined" with standing, Def.'s Br. filed Jan. 23, 2003, at 10 n. 1, the issue can be raised at any time during this litigation. Tellingly, defendant presents no case law to support its position.

This court previously gave notice to defendant that its standing and related arguments "should have preceded defendant's motion on damages and could have been filed even earlier." Order entered Jan. 8, 2003, at 1. Defendant may not interpose the defense that plaintiff is not the real party in interest seven years after the filing of the complaint. Defendant has waived its right to raise this issue. Accordingly, defendant's motion to dismiss based on real party in interest is denied, and plaintiff's motion for partial summary judgment on this issue is granted.

### 4. *Standing*

Standing, unlike real party in interest, implicates the court's jurisdiction and

thus cannot be waived. *Boeing Co. v. Comm'r of Patents & Trademarks,* 853 F.2d 878, 881 (Fed.Cir.1988). Nonetheless, plaintiff advocates viewing the standing argument with "judicial skepticism," Pl.'s Br. filed Jan. 17, 2003, at 8, because defendant has consistently argued, in previous litigation stemming from the enactment of FIRREA, that only parties in privity of contract with the Government can bring a breach claim. *See, e.g., Franklin Fed. Sav. Bank v. United States,* 53 Fed.Cl. 690, 717 (2002) (noting defendant's argument that thrift's directors and outside investors lacked standing because they were not parties to goodwill contract with Government); *Cain v. United States,* 53 Fed.Cl. 658, 664 (2002) ("Defendant argues that this Court does not have jurisdiction to hear the Individual Plaintiffs' claims because they lack privity of contract with the Government."); *Barron Bancshares, Inc. v. United States,* 53 Fed.Cl. 310, 314 (2002) (analyzing defendant's argument that "investor plaintiffs have no standing to pursue the present action" because only thrift directly received benefits of supervisory transaction).

■ Defendant has prevailed on this argument in some cases. *See Maher v. United States,* 48 Fed.Cl. 585 (2001), *aff'd,* 314 F.3d 600, 600 (Fed.Cir.2002); *First Hartford,* 194 F.3d at 1289. While this court can see no justification why the Government "should be allowed knowingly to take a position in one judicial proceeding, secure final judicial acceptance of that position, and then knowingly attempt to persuade a different court to accept a fundamentally inconsistent opinion," *Reynolds v. Commissioner,* 861 F.2d 469, 474 (6th Cir.1988), standing is a prerequisite to the exercise of jurisdiction and therefore must be addressed.

The Federal Circuit has held consistently that " 'the government consents to be sued only by those with whom it has privity of contract.' " *Maher,* 314 F.3d 600, 603 (quoting *Erickson Air Crane Co. of Wash. v. United States,* 731 F.2d 810, 813 (Fed.Cir. 1984)); *W.G. Yates & Sons Constr. Co. v.*

*Caldera,* 192 F.3d 987, 991 (Fed.Cir.1999) ("[G]overnment has not consented to be sued by those with whom it is not in privity."). Defendant contends that only the pre-conversion depositors, and not plaintiff as successor-in-interest to Citizens, have standing to bring the breach of contract claim.

After plaintiff acquired Citizens, it obtained the rights and privileges possessed by Citizens, including the right to stand in privity of contract with the Government. *See FDIC v. United States,* 51 Fed.Cl. 265, 271 (2001) (citing *Glendale Fed. Bank F.S.B. v. United States,* 239 F.3d 1374, 1378 (Fed.Cir. 2001), for proposition that "successor corporations can own goodwill claims"). The court has ruled that Citizens and the acquired thrifts entered into formal merger agreements, but that trial must resolve the issue of the Government's intent to contract.[8] *Fifth Third* 1 at 278. If the court concludes that the circumstances surrounding each transaction give rise to binding contracts with the United States, then Citizens, as a signatory to the contracts, will be in privity of contract with the Government, and plaintiff can pursue the breach claim. *See Castle,* 301 F.3d at 1339 (signatories to merger agreement have standing to bring breach claim); *Hansen Bancorp, Inc. v. United States,* 49 Fed.Cl. 168, 173 (2001), *appeal docketed,* No 03–5029 (Fed.Cir. Nov. 22, 2002) (same).

Defendant argues that plaintiff lacks privity of contract with the Government, because the right to bring suit based on the enactment of FIRREA is owned by the pre-conversion depositors only, so that plaintiff's acquisition of Citizens did not transfer the right to bring the breach claim to plaintiff. Several factors militate against a finding that the depositors have standing.

Defendant has identified no case law supporting the proposition that pre-conversion depositors have standing to bring a breach claim. In *California Housing Securities, Inc. v. United States,* 959 F.2d 955 (Fed.Cir.1992), the court addressed whether the appointment of the OTS and the RTC as conservator and receiver, respectively, for a failing thrift

---

8. Disputed facts include the extent of communications between Citizens and the FHLB–Cincinnati, the economic circumstances surrounding

the transactions, and the motivation of the parties. *Fifth Third* 1 at 278.

constituted a compensable taking. Plaintiff in *California Housing* was the sole shareholder of the thrift, and defendant argued that plaintiff had no standing to sue individually or on behalf of the thrift. The Federal Circuit disposed of this argument in a footnote, stating that the shareholder had standing because the complaint could be construed as having been filed by the shareholder on behalf of the corporation and that compensation to the corporation would result in surplusage to which the shareholder possessed a direct interest. 959 F.2d at 957 n. 2.

*Branch v. United States,* 69 F.3d 1571 (Fed.Cir.1995), presented an identical issue. Plaintiff in *Branch* was the trustee of a holding company forced into bankruptcy after three of its bank holdings were seized by the Government under the cross-guarantee provision of FIRREA. The cross-guarantee provision holds banks liable for losses incurred by sister banks owned by the same holding company. Plaintiff alleged that this provision effected a compensable taking, and the Federal Circuit, *sua sponte,* confirmed that plaintiff had standing for the same reasons cited in *California Housing. Branch,* 69 F.3d at 1575.

The Federal Circuit followed *California Housing* and *Branch* in *First Hartford,* 194 F.3d at 1288. The court reasoned in *First Hartford* that plaintiff, as a shareholder of a savings and loan seized and liquidated by the Government, had standing to bring a takings claim because it had "a property interest in any eventual liquidation surplus." 194 F.3d at 1288. As any surplus from the thrift's liquidation statutorily was mandated to be distributed to its shareholders, plaintiff held a cognizable property interest upon which to sue. Plaintiff's interest in *First Hartford* was "not materially distinct" from plaintiffs' property interests in *California Housing* and *Branch* because "in those cases, like [in *First Hartford*], a judgment favorable to the plaintiff would increase the assets of the depository institution and thus potentially enlarge any liquidation surplus to be distributed among the shareholders."[9] *Id.*

Defendant has not shown how these three cases can be construed as conferring standing to sue on the pre-conversion depositors. Apparently, defendant equates the depositors' interests in pre-conversion Citizens with the property interests found to confer standing in these three cases. Relevant case law does not support this position; indeed, it is apparent that depositors possess a minimal interest in a savings and loan.

Defendant cites two cases, *Paulsen v. Commissioner,* 469 U.S. 131, 105 S.Ct. 627, 83 L.Ed.2d 540 (1985), and *Society for Savings in the City of Cleveland v. Bowers,* 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955), for the proposition that a mutual savings and loan is owned by its depositors. Closer inspection of these cases, however, reveals the limited ownership rights that depositors possess. In *Paulsen* the Supreme Court addressed the tax consequences for stockholders in an equity thrift who had their shares converted, upon a merger, into deposits held in a mutual thrift. The Court acknowledged that the depositors' interest in the mutual had equitable characteristics, but ultimately concluded that the debt features of this interest "greatly outweigh[ed] the equity characteristics." 469 U.S. at 140, 105 S.Ct. 627. In fact, the Court observed that, because no one would pay more than face value for the deposits, "the incremental value attributable to the equity features was, practically, zero." *Id.* Accordingly, the deposits were "cash equivalents," *id.,* and did not equate to the ownership interest enjoyed by stockholders.

*Bowers* yields a more disappointing result for defendant. In that case the Supreme Court reversed the determination that a state property tax was imposed upon the intangible ownership interests of depositors and not, as two savings and loans contended, upon the federal bonds in their holdings. In comparing the alleged ownership claims of the depositors with those of the stockholders, the Court noted that the only chance a depositor had of obtaining anything more than the value of his deposits and accrued interest "would be in the unlikely event of a solvent

---

9. The court proceeded to rule in *First Hartford* that the Court of Federal Claims has jurisdiction to hear shareholder derivative suits in certain situations, but that holding is inapposite to defendant's standing argument.

liquidation, a possibility that hardly rises to the level of an expectancy." 349 U.S. at 150, 75 S.Ct. 607. Because it "stretches the imagination very far to attribute any real value to such a remote contingency," and because "it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point." *Id.* Thus, it is clear that the depositors held almost no interest in the savings and loans, aside from the value of their accounts.

In short, "[n]ominally the customers own the mutual, but it is ownership in name only," *Ordower,* 999 F.2d at 1185, and the depositors' interest in a mutual thrift "is essentially that of creditors," *York v. Federal Home Loan Bank Bd.,* 624 F.2d 495, 499 (4th Cir.1980). Given their extremely limited ownership interests, depositors would not possess standing to sue. The Federal Circuit has concluded that shareholders, who did not play an integral role in brokering supervisory mergers, have no standing to bring a breach claim. *Castle,* 301 F.3d at 1337; *Glass v. United States,* 258 F.3d 1349, 1355 (Fed.Cir.2001). It would defy logic for the depositors, with their limited ownership interests, to have standing to sue when equity owners do not.

Defendant further contends that the depositors "were not compensated for their ownership rights when the mutual converted," Def.'s Br. filed Sept. 18, 2002, at 9, and, because these ownership rights included the breach claim, that plaintiff did not acquire this right upon the purchase of Citizens in 1998.

Although it is curious how parties with more limited ownership interests than shareholders could possess a right that shareholders do not, plaintiff responds that the depositors were compensated for their rights in two

ways: 1) through the opportunity to purchase stock, at a *pro forma* market price, ahead of the general public and equal to the value of their respective accounts,[10] and 2) through the creation of the liquidation account. The opportunity to purchase stock and the creation of the liquidation account have been held as sufficient to compensate depositors for their limited ownership interests in the thrift. *Ordower,* 999 F.2d at 1185. Plaintiff asserts as fact, and defendant does not dispute, that Citizens' depositors were given the opportunity to purchase Citizens' common stock before the general public and that the liquidation account was created. *See* CitFed Bancorp, Inc., Subscription and Community Prospectus, Nov. 8, 1991, at 1–2, 98. Defendant's argument that the depositors have not been compensated thus must be rejected.

In its reply with respect to its motion to dismiss, defendant forwards a new theory as to why plaintiff lacks standing. Because the depositors' rights to bring the breach claim flowed to the liquidation account upon Citizens' conversion, defendant interprets those rights, when depositors close out their accounts, as reverting not to plaintiff, but to the Government. Defendant explains that the Government succeeds to the breach claims, as its "economic interests," unlike plaintiff's, have been impacted by the enactment of FIRREA "because the risk of deposit insurance payouts arguably increased." Def.'s Br. filed Jan. 23, 2003, at 9. Under defendant's logic no justiciable controversy is present because the Government, as the party in breach, effectively would be "taking money from one pocket and putting it into another pocket."[11] *Id.*

Federal Circuit precedent indicates that parties with superior ownership rights to depositors, *i.e.,* shareholders, do not satisfy

---

10. *See* 12 C.F.R. § 563b.3(c)(2) (2002); *Ordower,* 999 F.2d at 1185; *York,* 624 F.2d at 500 n. 10.

11. Defendant places a slightly different spin on this argument when it contends in its sur-reply that, "as depositors of the mutual waive their rights to a fraction of the net worth [reflected in the liquidation account] by reducing or closing their accounts, the Government steps into their shoes as claimant." Def.'s Br. filed Feb. 3, 2003, at 8. However, defendant does not establish the factual predicate necessary to validate this argu-

ment—that the depositors possessed the right to bring the breach of contract suit. Defendant's invocation of *Ordower* actually detracts from its argument, as the case does not address the standing of depositors to bring a breach claim. The Seventh Circuit recognized the limited rights held by stockholders in a savings and loan, labeling their interest as "a liquidation preference, not a transferable property right." 999 F.2d at 1187.

standing requirements. *Castle*, 301 F.3d at 1337; *Glass*, 258 F.3d at 1355. Plaintiff also points out that the liquidation account is created for the benefit of the depositors, not the Government. Defendant hinges nonjusticiability on the speculative, unsupported assertion that FIRREA "arguably increased" the risk of deposit insurance paycuts. Def.'s Br. filed Jan. 23, 2003, at 9. Such a speculative assertion does not provide a basis upon which to grant defendant's motion to dismiss.[12] Defendant has failed to establish that depositors hold the right to bring the breach claim.

Defendant has failed to substantiate that the depositors owned the breach claim and that the claim reverts to the Government upon the closing of the depositors' accounts. Conversely, plaintiff has established that depositors' ownership interests in savings and loans are negligible and do not equate to the ownership interests possessed by stockholders. As the Federal Circuit has ruled that stockholders, unless integral to the negotiation of the supervisory mergers, do not have standing to bring breach of contract claims, it follows that depositors also lack standing to bring such claims. Finally, if the court concludes that the circumstances surrounding the supervisory mergers give rise to enforceable contracts, plaintiff's privity with the Government will be established. Parties in privity may sue for breach of contract. Accordingly, defendant's motion to dismiss based on standing is denied, and plaintiff's motion for partial summary judgment on this issue is granted.

### 5. *Proper/indispensable party*

▪ Although only obliquely addressed by defendant, plaintiff has moved for partial summary judgment on the issue that no in-

dispensable parties to this case exist other than plaintiff and defendant. Plaintiff correctly notes that only Citizens, the acquired thrifts, and the FHLB–Cincinnati were parties to the supervisory transactions and that third-party beneficiaries to a contract have been found not to be indispensable parties in a breach action regarding the subject contract. *See Prudential Oil & Minerals Co. v. Hamlin*, 277 F.2d 384, 387 (10th Cir.1960). As the Federal Circuit consistently has rejected the proposition that shareholders and investors not integrally involved in the formation of the supervisory merger contracts have standing to sue, it follows that depositors, with their limited ownership rights, similarly lack standing. A party without standing cannot be indispensable to the prosecution of this litigation, and defendant did not advocate joinder of the depositors until filing its opposition to plaintiff's partial motion for summary judgment in January 2003.

Defendant argues that *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268 (2d Cir.1944), requires joinder of the depositors to this litigation. In that case, which involved a composer's and his lyricist's respective rights in their copyrighted song, the court noted that "the holder of the legal title to a copyright might sue without joining others who had an equitable interest in the copyright." 140 F.2d at 269. The case does not support joinder of the depositors to this litigation. Accordingly, defendant's motion to dismiss based on proper party is denied, and plaintiff's motion for partial summary judgment on this issue is granted.

### CONCLUSION

Although defendant raised its real party in interest, standing, and proper party arguments late in the proceedings, the court care-

---

12. Defendant postulates that, because goodwill allegedly was included in Citizens' net worth when it converted to an equity form, the breach claims, as part of the value of the goodwill, became part of the liquidation account. This argument hinges on one page from CitFed's subscription prospectus. Plaintiff has objected, most recently in its sur-rebuttal filed February 7, 2003, that defendant fails to distinguish Citizens' supervisory goodwill and any contingent claim for breach. Defendant has not shown that either element was considered part of the mutual's liq-

uidation account or that Citizens ever booked a contingent breach claim as an asset before the conversion.

Plaintiff prevails on the issue of privity based on any contract that is established, as well as on defendant's arguments that the breach claim became part of the liquidation account or somehow was included in goodwill. However, defendant may attempt to prove at trial that plaintiff did not acquire the breach claim for other reasons. *See* RCFC 54(b).

fully has considered defendant's contentions. Defendant has waived its right to claim that plaintiff is not the real party in interest; it has not shown that plaintiff lacks standing; and it has not proved that the depositors possessed the breach claim, have standing, or are indispensable parties to this litigation. Plaintiff has shown that it will stand in privity of contract with the Government if the court concludes that enforceable contracts exist between Citizens and the Government. It has presented case law underscoring the limited ownership rights held by depositors in a savings and loan and rejecting the right of shareholders not directly involved in supervisory mergers to sue for breach of contract. Finally, plaintiff has shown that the depositors were compensated satisfactorily for their limited ownership rights and that they are not required to be joined in this litigation.

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion to dismiss for failure to state a claim is denied as to the issues of real party in interest, standing, and proper party.

2. Plaintiff's cross-motion for partial summary judgment on real party in interest, standing, and proper party is granted.

