STERLING SAVINGS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–829 C.

United States Court of Federal Claims.

July 9, 2003.

William D. Symmes, Spokane, WA, counsel of record for Plaintiffs, with whom were Leslie R. Weatherhead and William M. Symmes.

Elizabeth M. Hosford, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were Jeanne E. Davidson, Deputy Director; David M. Cohen, Director; and Stuart E. Schiffer, Deputy Assistant Attorney General.

## OPINION

DAMICH, Chief Judge.

The Court has found the Government liable for breach of contract, in this *Winstar*-related case, in connection with Sterling Savings Association's acquisition of three thrifts. Nevertheless, before the Court can determine the appropriate remedy for the breach, it must resolve whether Sterling has standing to assert a damages claim. Defendant argues that Sterling does not have standing due to the issuance of an injunction against the Government, which prevented it from taking any regulatory action inconsistent with the agreements it entered into with Sterling. Thus, Defendant asks the Court to grant partial summary judgment in its favor. For the reasons stated below, the Court finds Sterling has standing to assert a claim for damages, and thus Defendant's Cross–Motion for Partial Summary Judgment with respect to this issue is DENIED.

## I. Background

The Government argues that Sterling has no cause of action for damages during the period where an injunction, entered by a district court sitting in the Eastern District of Washington, prevented the Government from enforcing any regulation against Sterling that was inconsistent with the agreements entered into in connection with the acquisition of three thrifts: (1) the Lewis

Federal Savings & Loan Association of Chehalis, Washington ("Lewis"), (2) Tri–Cities Savings & Loan Association of Kennewick, Washington ("Tri–Cities"), and (3) Central Evergreen Federal Savings & Loan Association of Chehalis, Washington ("Central Evergreen").[1]

The Government was enjoined from the following actions:

a. imposing or enforcing any regulatory restriction or taking other regulatory action against Sterling that is inconsistent with the provisions of the November 1985, April 1988, and December 1988 supervisory acquisition agreements between Sterling and the FHLBB and the FSLIC;

b. enforcing or attempting to enforce the operating restrictions imposed by the January 26, 1990, March 9, 1990, and the May 11, 1990, letters from the Office of Thrift Supervision to Sterling that treat Sterling as a troubled thrift;

c. placing Sterling in a receivership or conservatorship; and

d. interfering with Sterling's proposed public stock offering contemplated in the 1988 Central Evergreen acquisition agreement.

*Sterling Savings Assoc. v. Ryan,* 751 F.Supp. 871, 881–82 (E.D.Wash.1990).

By the time the injunction was lifted in 1992, Sterling had achieved regulatory compliance by raising in excess of $23 million through a 1991 public offering; therefore, the Government argues that Plaintiff lacks standing because the injunction prevented Sterling from suffering any injury by the Government's breach. Def.'s Supp. Mem. at 38–39. Defendant argues that in order for Sterling to maintain a claim for breach of contract it must demonstrate it has standing to bring the claim. It argues Sterling must

" 'show that [plaintiff] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ... and the injury fairly can be traced to the challenged action.' " Def.'s Supp. Mem. at 39 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Defendant contends Sterling has not demonstrated direct injury or that it resulted from Defendant's conduct.

Sterling argues that despite the Government's contentions, it suffered real injury. For example, prior to the injunction, Sterling asserts that Defendant treated Sterling as an undercapitalized thrift and forced it to shrink its operations and abandon its growth strategy through the imposition of operating restrictions. These restrictions include: limiting Sterling's asset growth, the amount of loan it could offer to one borrower, its ability to pay dividends, and the types of transactions it could enter into, such as lending to only existing customers. Pl.'s Reply to Def.'s Supp. Mem. at 29. Sterling contends that by the time of the injunction hearing, Defendant had already breached the agreements at issue and that the injunction did not prevent the damage that was already done to Sterling's financial condition. Sterling claims that if Defendant had honored its agreements, Sterling would have had more capital to leverage and overall, a more profitable institution. Moreover, Sterling asserts that it never replaced all the capital it lost as a result of the Government's breach, and the injunction neither "recaptured" the lost capital nor gave Sterling the benefit of its bargain. Significantly, Sterling asserts that despite the injunction, Sterling was still treated like a troubled thrift, and in reality could not operate as if the breach never occurred.

1. The Court issued an opinion on liability on September 12, 2002, *see* 53 Fed.Cl. 599, wherein the underlying facts with respect to these three acquisitions at issue are discussed at length. Thus the Court will only discuss the facts as necessary, when they are relevant to the disposition of the Government's partial motion for summary judgment. By way of background, in two acquisitions (Lewis and Tri–Cities), the Court found an express promise that intangible assets (goodwill) resulting from the acquisitions could be amortized by Sterling. In the third thrift acquisition (Central Evergreen), the Court found that a bank board resolution, reciprocal resolutions of the bank's board of directors, and a business plan were sufficient to demonstrate a bargained-for-exchange. The Court concluded that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, codified, in relevant part, at 12 U.S.C. § 1464, breached these agreements.

## II. The Standard for Granting a Motion for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and thus the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. After adequate time for discovery and on motion, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, where that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. The Court must resolve any doubts about factual issues in favor of the non-moving party, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed.Cir.1998), and draw all reasonable inferences in its favor. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir.1995).

## III. Discussion

Article III of the United States Constitution limits the function of the federal courts to resolving matters that involve only actual "cases" or "controversies." *McKinney v. United States Dept. of Treasury*, 799 F.2d 1544, 1549 (Fed.Cir.1986). Standing further defines the "case" or "controversy" requirement of Article III. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *McKinney*, 799 F.2d at 1549. Although the U.S. Court of Federal Claims is an Article I Court, 28 U.S.C. § 171(a), litigants must demonstrate that they have standing to bring a claim here just as in any other federal court. *See e.g., Glass v. United States*, 258 F.3d 1349, 1355–56 (Fed.Cir.2001); *Landmark Land Co., Inc.*

*v. F.D.I.C.*, 256 F.3d 1365, 1380 (Fed.Cir. 2001); *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1290 (Fed.Cir.1999); *Cain v. United States*, 53 Fed.Cl. 658, 666 (2002); *Coast–to–Coast Financial Corp. v. United States*, 53 Fed.Cl. 241, 244 (2002); *Fifth Third Bank of Western Ohio v. United States*, 55 Fed.Cl. 372, 377 (2003); *Emerald Int'l Corp. v. United States*, 54 Fed.Cl. 674, 677 n. 5 (2002).

█ Standing has both constitutional and prudential requirements. *First Hartford*, 194 F.3d at 1290. Constitutional limitations under Article III require that a plaintiff show actual or threatened injury "as a result of the putatively illegal conduct of the defendant," whereas prudential limitations relate to the Court's own "administrative discretion to hear a case" thereby avoiding "questions of broad social import where no individual rights would be vindicated ...." *Id.* (citations omitted). To demonstrate constitutional standing, the plaintiff must allege that (1) it has suffered an *"injury in fact,* [i.e.,] an invasion of a legally protected interest," (2) "there must be a *causal connection* between the injury and the conduct complained of," and, (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be *'redressed* by a favorable decision.'" *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed.Cir.2003) (emphasis added) (citations omitted). Standing is a threshold jurisdictional issue which may be decided without addressing the merits of Sterling's damages claim. *Castle v. United States*, 301 F.3d 1328, 1337 (Fed.Cir.2002) (citations omitted). "The focus is on the qualifications and status of the party seeking to bring his complaint before a federal court and not on the issues he wishes to have resolved." *McKinney v. United States Dept. of Treasury*, 799 F.2d 1544, 1549 (Fed.Cir. 1986) (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). The party invoking jurisdiction has the burden of establishing standing. *Myers Investigative and Security Services, Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231,

110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). "[P]rejudice (or injury) is a necessary element of standing." *Myers,* 275 F.3d at 1370.

■ Even where the likelihood of proving damages is minimal, a party's status, rather than the merits of the claim, is the proper focus of a standing inquiry. *See Castle v. United States,* 301 F.3d 1328, 1340–41 (Fed. Cir.2002). In *Castle,* the agreement at issue was signed by a bank, the FSLIC, and two individuals, Castle and Harlan. *Id.* at 1334. The Federal Circuit held that Castle and Harlan had standing to pursue the breach of contract claim against the Government, but they were entitled to no damages. *Id.* at 1337. Because Castle and Harlan signed the agreement as individuals, they were in privity of contract with the Government and had a basis to allege injury for breach of contract.[2] *Id.* at 1337, 1339–1340. Nevertheless, Castle and Harlan could not prove damages because they incurred no financial liability when they signed the agreement since they never agreed to maintain the tangible capital of the bank. *Id.* at 1340. Thus, plaintiffs' status as signatories was sufficient to establish standing, but their obligations under the contract determined that they were not entitled to damages. *See id.*

In the present case, Defendant argues that Sterling does not have standing to assert a claim because the Washington district court's injunction prevented the Government from violating the merger agreements. Even if this is true, it only suggests that Sterling had taken measures to mitigate its damages by seeking an injunction to largely avoid regulation, thereby allowing it to raise the capital necessary to meet its regulatory requirements. In *Castle,* the Federal Circuit recognized the distinction between the threshold jurisdictional issue, whether a party can suffer direct injury as a result of a defendant's conduct, and the degree of harm suffered, which inquires as to whether, and to what extent, a plaintiff can actually recover for the

harm. Here, the degree of damages that Sterling suffered as a result of the breach has no bearing on Sterling's status as a party to the contract or its ability to bring an action for the breach of its obligations by Defendant. Sterling need only have "a personal stake in the outcome of the controversy ...." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ("'Injury in fact' ... serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.").

Moreover, Sterling undoubtedly has more than a mere interest in the problems created by FIRREA for acquiring thrifts. The Court has found that Defendant has breached its contractual obligations specifically with Plaintiff, who was in privity of contract with the Government.[3] *Sterling,* 53 Fed.Cl. at 615. Viewing the facts in a light most favorable to Sterling, Sterling has asserted sufficient economic injury as a result of the breach to establish standing, regardless of the injunction. In deciding the Government was liable for breach of contract, this Court wrote:

> After FIRREA was enacted and its implementing regulations were promulgated, Defendant prohibited Plaintiff from recording supervisory goodwill and FSLIC cash contributions as assets for regulatory capital purposes and from amortizing the goodwill. It also imposed restrictions upon Plaintiff's operations for failing to meet its regulatory ratio requirements as a result of prohibiting Plaintiff from recording supervisory goodwill and FSLIC cash contributions as assets.

*Id.*

In short, Sterling, as a party to the agreements breached, has standing to assert its

---

2. In contrast, the Federal Circuit held that the bank's shareholders who sued as third-party beneficiaries of the contract, did not have standing to sue because the contract did not stand to benefit them directly, or " 'personally, independently of his or her status as a shareholder.' " *Id.* at 1338 (quoting *Glass v. United States,* 258 F.3d 1349, 1353–54 (Fed.Cir.2001)).

3. In contrast, any contractual claim brought by Sterling's parent company, Sterling Financial Corporation, was dismissed because Plaintiff conceded that its parent was not in privity of contract with Defendant. *Sterling,* 53 Fed.Cl. at 602 n. 1.

claim for damages. It has alleged a concrete injury-in-fact that it has shown is casually connected to the Defendant's conduct, and which may be redressed by a favorable decision on damages from this Court. This does not necessarily mean, however, that Plaintiff will win on the merits of its damages claim. For an injury to be redressable, a favorable decision need only "relieve" plaintiff's "discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *See e.g., Larson v. Valente,* 456 U.S. 228, 243 n. 15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103 n. 15, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (emphasis in original) (citing *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) ("Although we have packaged the requirements of constitutional 'case' or 'controversy' somewhat differently in the past 25 years—an era rich in three-part tests—the point [of redressability] has always been the same: whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.' ")

While the Government cites *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), in support of its position, much of the language in that decision actually demonstrates why Sterling has standing here. In *Valley Forge,* pursuant to the provisions of the Federal Property and Administrative Services Act, the Department of Health, Education and Welfare conveyed government property to a religious organization without taking financial payment for it. *Id.* at 468, 102 S.Ct. 752. An organization devoted to the separation of church and state challenged the Act as a violation of the Establishment Clause. *Id.* at 469, 102 S.Ct. 752. The Court held that the organization did not have standing to challenge the Act because it could not demonstrate that its members suffered an injury-in-fact as a result of the alleged unconstitutional actions. *Id.* at 485, 102 S.Ct. 752. Specifically, the Court held that respondent did not allege any "personal injury suffered by them ... other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* at 485,

102 S.Ct. 752. In the present case, there is no question that Sterling Savings was personally affected by the Defendant's breach. It was a party to the merger agreements at issue and it satisfied the conditions set forth in those contractual documents, which the Government has breached.

Furthermore, in *Valley Forge,* the Supreme Court explained that the standing requirement serves to ensure "that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* at 472, 102 S.Ct. 752. In the present case, the breach and the exact measure of Sterling's damages provide precisely the "concrete factual context" that the Court is referring to. Also significant, the Court stated that the standing requirement "focuses on the *party* seeking to get his complaint before a federal court and not on the *issues* he wishes to have adjudicated." *Id.* at 484, 102 S.Ct. 752 (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)) (emphasis added); *see also McKinney,* 799 F.2d at 1549 (citing *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). This same principle was followed in *Castle, supra,* 301 F.3d at 1339, when plaintiffs demonstrated privity of contract with the Government, and yet were unable to recover for the injury they allegedly suffered.

The Government also cites *Linda R.S. v. Richard D.,* 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), in an attempt to demonstrate that the "party who invokes (judicial) power must be able to show ... that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of*" defendant's conduct. *Linda R.S.,* 410 U.S. at 618, 93 S.Ct. 1146 (emphasis added) (citation omitted). In *Linda R.S.,* the mother of an illegitimate child challenged the constitutionality of a law stating that any parent who fails to support his or her children is subject to criminal penalty. 410 U.S. at 614–15, 93 S.Ct. 1146. The mother argued that the law should be applied to fathers of both legitimate and illegitimate chil-

dren. *Id.* at 616, 93 S.Ct. 1146. There the prosecutor's office declined to prosecute the father of plaintiff's illegitimate child because the statute was consistently interpreted to apply only to married parents. *Id.* at 615–16, 93 S.Ct. 1146. The Court held that the plaintiff lacked standing because a private citizen has no judicially cognizable interest in the prosecution of another citizen. *Id.* at 618–19, 93 S.Ct. 1146. The Court focused on the nexus between the " 'status asserted and the claim sought to be adjudicated,' " which the Court found was absent. *Id.* at 618, 93 S.Ct. 1146 (quoting *Flast v. Cohen,* 392 U.S. at 102, 88 S.Ct. 1942). It explained that even if the statute applied to parents of illegitimate children, the only sure remedy would be incarceration of the child's father, rather than actual child support payments. Thus, there was no direct relationship between the alleged injury (failure to secure child support payments) and the claim sought to be adjudicated (the constitutionality of the statute). *Id.* at 618, 93 S.Ct. 1146. In contrast, in Sterling's case, the Court can find such a "direct relationship" between the alleged economic injury and the claim for contract damages to be adjudicated. Sterling was successful in establishing the Government's liability for breach of contract and Plaintiff has shown a logical nexus between its status as a party to the breached agreements and the remedy it seeks, contract damages.

Finally, it is clear that a *Winstar* plaintiff, like Sterling, in privity of contract with the Government, has a basis for asserting injury as a result of the Government's breach of contract. *Cain v. United States,* 53 Fed.Cl. 658, 664 (2002) ("a plaintiff must establish that it is the proper party to maintain a cause of action and possesses privity of contract with the Government"); *Fifth Third Bank of Western Ohio v. United States,* 55 Fed.Cl. 372, 380 (2003) ("parties in privity may sue for breach of contract"); *Coast–to–Coast Financial v. United States,* 53 Fed.Cl. 241, 244 (2002) ("[O]nly plaintiffs who are in privity of contract with the government can have standing to bring a claim in this court.") (citations omitted); *see also Centex Corp. v. United States,* 52 Fed.Cl. 599, 603 (2002). In contrast, parties who sue as shareholders, with no independent stake in the outcome other than through their ownership interest in the corporation, are not in privity of contract and have no basis to allege injury for breach. *See Glass v. United States,* 258 F.3d 1349, 1354–55 (Fed.Cir.2001) (shareholders did not have standing to sue because they were not third-party beneficiaries to the contract, but at most incidental beneficiaries); *First Hartford Corp. Pension Plan and Trust v. United States,* 194 F.3d 1279, 1289 (Fed.Cir.1999) (holding that shareholders had standing to bring derivative suit against the Government, but not direct suit due to lack of privity); *F.D.I.C. ex rel. Karnes County Sav. and Loan Ass'n v. United States,* 52 Fed.Cl. 503, 508–09 (2002) (shareholders had no standing to bring breach of contract action because they were not in privity of contract with the Government even though they made a substantial investment in the contracting corporation); *Franklin Federal Savings Bank, et al. v. United States,* 53 Fed.Cl. 690, 716–19 (2002) (shareholders had standing because the contract set forth terms and conditions they were required to fulfill in their individual capacities); *LaVan v. United States,* 53 Fed.Cl. 290, 300–01 (2002) (shareholders had standing to sue because they negotiated the original contract as individuals); *Cain v. United States,* 53 Fed.Cl. at 665–66 (shareholders were neither in privity of contract nor a third-party beneficiary of the contract).

Notably, in *Winstar*-related cases where the Federal Deposit Insurance Corporation ("FDIC") sues as a successor-in-interest to a failed thrift, the size of the recovery sought is often important in determining whether standing exists. Nevertheless, this is true only because of the statutory order of priority for distributing the proceeds of a judgment to a failed thrift's creditors. *See, e.g., Landmark Land Co., Inc. v. F.D.I.C.,* 256 F.3d 1365, 1381 (Fed.Cir.2001); *Cain,* 53 Fed.Cl. at 666–67; *F.D.I.C. ex rel. Karnes County Sav. and Loan Ass'n,* 52 Fed.Cl. at 504. Although these cases evaluate the size of plaintiff's potential recovery in deciding whether the FDIC has standing, the size of recovery is only relevant to determining whether the FDIC stands in an adverse posi-

tion to the Government, thereby creating a "case" or "controversy" under Article III. In *Landmark Land,* the Federal Circuit explained that by operation of the statutory scheme of priority, the FDIC is obligated to completely satisfy the claim of the Government, that of the FSLIC Resolution Fund ("FRF"), against a failed thrift before distributing the proceeds to the thrift's other creditors. Therefore, if the FRF's claim for damages exceeds or equals a damages award, the FDIC, as manager of the FRF and payer of judgments, is essentially asserting a claim to pay itself and none of the proceeds would benefit any other party except for the Government. Thus, the measure of the award became relevant to standing in that instance because where the FDIC had not asserted a claim in excess of what the failed thrift owed to the Government, it had not satisfied the case or controversy requirement of Article III. *Landmark Land Co., Inc. v. F.D.I.C.,* 256 F.3d 1365, 1381 (Fed.Cir.2001). *See also, Glass v. United States,* 258 F.3d 1349, 1355–56 (Fed.Cir.2001) ("[U]nless the FDIC recovers over $15 million in damages, any recovery will simply revert to the FRF–RTC."); *F.D.I.C. v. United States,* 51 Fed.Cl. 265, 270 (2001) (Because any damages received would be used to pay the subrogated claim of the FRF, as creditor, the claim was a "nonjusticiable intra-governmental controversy."); *Admiral Fin. Corp. v. United States,* 329 F.3d 1372, 1382 (Fed.Cir.2003), *aff'g,* 51 Fed. Cl. 366 (2002) ("We hold that, because the sum of (i) the FDIC's claim and (ii) Admiral's restitution claims that the FDIC asserts it owes is less than the amount the failed thrift owes to the government, the case-or-controversy requirement is not satisfied as to the FDIC."). Conversely, the FDIC does have standing where it seeks an amount greater than that owed solely to the Government. *Barron Bancshares v. United States,* 53 Fed. Cl. 310, 314 (2002) ("[A]ny recovery would result not simply in a transfer of funds between government agencies, but would also involve additional amounts to be paid out to the thrift's creditors .... The FDIC, as receiver for the failed institution, thus has both a right and a duty to pursue its claims.").

## IV. Conclusion

Sterling has standing to assert its claim for damages because it has demonstrated that, as a party to the breached agreements at issue, it has suffered a concrete injury-in-fact; this injury is causally connected to Defendant's conduct; and Sterling's injury could be redressed by a favorable decision on damages. The Government's argument, while it may be relevant to the calculation of damages, has no bearing on Sterling's standing to assert a claim for damages. For the reasons stated herein, Defendant's Cross–Motion for Partial Summary Judgment on this issue is DENIED.