**EAGLE DESIGN & MANAGEMENT, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Circle Solutions, Inc., Intervenor.**

No. 04–1200C.

United States Court of Federal Claims.

Sept. 16, 2004.

———

A. Jeff Ifrah, Paul, Hastings, Janofsky & Walker, LLP, Washington D.C., for Plaintiff.

James D. Colt, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

Drew A. Harker, Arnold and Porter, LLP, Washington D.C., for Intervenor. Joan G. Ochs and Joseph M. Catoe, Arnold & Porter, LLP, Washington D.C., Of Counsel for Intervenor.

## OPINION AND ORDER OF DISMISSAL

WILLIAMS, Judge.

Defendant and Intervenor seek dismissal of this post-award bid protest claiming that Plaintiff, as a subcontractor to a disappointed bidder, lacks standing. Plaintiff, Eagle Design and Management, Inc. (Eagle Design), a subcontractor to Z–Tech, the apparent successful offeror in this procurement, claims that Z–Tech should not have been disqualified in the instant procurement for failing to meet the requisite SBA size standard.

SBA determined that Z–Tech was not a small business because it was an affiliate of Eagle Design under SBA regulations. Eagle Design appealed SBA's decision, but SBA's Office of Hearing and Appeals (OHA) concluded that Plaintiff did not have standing to request review of the SBA's size determination regarding Z–Tech. Eagle Design has asked this Court to invalidate OHA's decision and vacate the award subsequently made by the National Institute of Diabetes and Digestive and Kidney Diseases (NIDDK) to Intervenor Circle Solutions Inc. (Circle Solutions).[1] Z–Tech has neither filed its own protest, nor sought to intervene here.

Because Eagle Design was a subcontractor to an offeror in this procurement and was not itself an actual or prospective offeror, it is not an interested party within the meaning of this Court's authorizing legislation as construed by the United States Court of Appeals for the Federal Circuit. As such, Eagle Design lacks standing to bring this post-award bid protest.[2]

---

1. Eagle Design does not allege that it would have been an offeror but for SBA's erroneous decision here. It only claims that Z–Tech should have been qualified as a small business and that its status as Z–Tech's subcontractor renders it an interested party here.

2. This Court does not reach the issue of whether jurisdiction lies here to challenge this type of an SBA decision in the context of a post-award bid protest.

## FACTUAL BACKGROUND [3]

On August 15, 2002, NIDDK issued Request for Proposals (RFP) number NIH–NIDDK–02–05 for three information clearinghouse contracts, soliciting support services for public inquiry response, database and materials development, meetings and exhibit support and communications planning and outreach. The RFP required offerors to be small businesses as defined by the North American Industry Classification System (NAICS) rating code 561110, "Office Administrative Services," mandating annual revenues of less than $6 million.

Eagle Design admittedly did not meet this NAICS rating code and unsuccessfully appealed the contracting officer's designation of this code to OHA. Plaintiff subsequently filed a pre-award bid protest with this Court, again challenging this NAICS code and recommending alternative codes which would have allowed offerors to have average annual revenues of $21 million and thus permitted Eagle Design to qualify as a small business in this procurement.[4]

Concurrent with its challenge to the NAICS code designation, Eagle Design entered into a teaming agreement with Z–Tech (Teaming Agreement) on September 6, 2002. The Teaming Agreement provided that Z–Tech, a small business under NAICS code 561110, would be the prime contractor with Eagle Design as subcontractor in the instant procurement. The Teaming Agreement required Eagle Design to provide professional expertise in the development of materials under the RFP. Z–Tech, on the other hand, would be responsible for administrative functions, including Project Management, Meeting/Exhibit Support, Inquiry Response, Graphic Design and Information Technology. The Teaming Agreement provided that 51 percent of the labor costs for proposed work on the RFP would be Z–Tech's and 49 percent, Eagle Design's. The Teaming Agreement was to remain in force until the subject contract was awarded by the Government to a contractor other than Z–Tech. Once the award was made to another successful offeror, the Teaming Agreement was rendered null and void by its terms.

In December 2002, Z–Tech submitted a proposal in response to the RFP, identifying Eagle Design as its subcontractor for specifically identified activities. On March 16, 2004, NIDDK notified offerors that the apparent successful offeror was Z–Tech. On March 23, 2004, Circle Solutions filed a size protest with the SBA Area Office, alleging that Z–Tech was not, in fact, a small business because Z–Tech and Eagle Design were co-equal joint venturers. The SBA Area Office granted Circle Solutions' size protest on May 13, 2004, stating that Z–Tech's unusually heavy reliance on Eagle Design in the performance of the contract rendered it an affiliate of Eagle Design and disqualified Z–Tech as a small business for purposes of the RFP.[5] As a result of SBA's decision, NIDDK withdrew the award to Z–Tech and awarded the contract to Circle Solutions. On May 18, 2004, Eagle Design appealed the SBA Area Office's decision to OHA, arguing that Z–Tech and Eagle Design were not joint venturers, but rather enjoyed a contractor-subcontractor relationship.[6]

---

3. This background is derived from the Complaint and its attachments.

4. This Court found that OHA failed to justify selection of the original code, and thus, remanded the case to the ALJ. Complaint, Ex. C. On remand, the ALJ reaffirmed the contracting officer's selection of NAICS code 561110. In accordance with the decision remanding the matter, the case was returned to the COFC, and on December 13, 2002, the COFC upheld OHA's decision affirming the original NAICS code. *Eagle Design and Mgmt., Inc. v. United States,* 57 Fed.Cl. 271 (2002).

5. Complaint, Ex. G. In reaching its conclusion, the SBA Area Office analyzed seven criteria: (1) who would manage the contract; (2) which party had the requisite expertise to carry out the contract; (3) which party "chased the contract"; (4) what degree of collaboration transpired between the prime contractor and subcontractor in preparing the bid; (5) whether there were discrete tasks to be performed by the parties, or a commingling of personnel and material; (6) what amount of work was to be performed by each party; and (7) which party would perform the more complex and costly contract functions.

6. Complaint, Ex. H. Eagle Design took issue with SBA's characterization of it as a joint venturer with Z–Tech, arguing instead that Z–Tech and Eagle were "proposing a proper contractor-subcontractor relationship."

OHA issued a final decision on July 15, 2004, dismissing Eagle's appeal for lack of standing and affirming the SBA Area Office's size determination.[7] Subsequently, on July 15, 2004, NIDDK awarded the contract to Circle Solutions. After a transition period ending in September 2004, Circle Solutions was to commence full performance. On July 22, 2004, Eagle Design filed the instant protest.

### Discussion

Defendant and Intervenor seek dismissal of this action on the ground that Eagle Design lacks standing. It is well established that before a federal court may address the merits of a legal claim, the person invoking the jurisdiction of the court must establish the requisite standing to sue. *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1032–33 (Fed.Cir.1995). Litigants before the Court of Federal Claims must demonstrate that they have standing to bring a claim, as in any other federal court. *Anderson v. United States,* 344 F.3d 1343, 1350 n. 1 (Fed. Cir.2003). Furthermore, the party invoking jurisdiction has the burden of establishing standing. *Myers Investigative and Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.2002); *Smith v. United States,* 58 Fed.Cl. 374, 382 (2003); *Sterling Savings v. United States,* 57 Fed.Cl. 234, 236 (2003).

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), gives this Court jurisdiction in bid protest actions and confers standing on an "interested party" objecting to a proposed contract or to a proposed award or award of a contract. 28 U.S.C. § 1491(b)(1). Although the Tucker Act does not define the term "interested party," the United States Court of Appeals for the Federal Circuit has applied the Competition in Contracting Act's (CICA), 31

U.S.C. § 3551, definition of "interested party" to the Tucker Act's jurisdictional grant. *American Federation of Government Employees, AFL–CIO v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.2001) (AFGE). CICA defines an "interested party" as an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract." 31 U.S.C. § 3551(2).

Eagle Design admits that it was not an actual offeror in its own right and does not claim that it would have, itself, become a prospective offeror were the Court to correct SBA's alleged erroneous size determination with respect to Z–Tech.[8] Rather, Eagle would have participated in this procurement only as a subcontractor to Z–Tech. Nonetheless, Eagle urges the Court to ignore its designation as a subcontractor and focus instead on the substance of Eagle's proffered performance, noting it would incur 49 percent of the labor costs, thereby making it an actual offeror coextensive with its prime contractor, Z–Tech.

Our appellate authority has squarely rejected the notion that a subcontractor qualifies as an "interested party" under the CICA definition, leaving no room for the type of scrutiny Plaintiff urges into what lies beneath this subcontractor's nomenclature. In *MCI Telecommunications Corp. v. United States,* 878 F.2d 362, 365 (Fed.Cir.1989), the Federal Circuit construed the nearly identical definition of "interested party" under the now repealed Brooks Act, 40 U.S.C. § 759(f)(9)(B) (1994)[9], and concluded that an offeror who "deliberately chose to be only a subcontractor and not to submit its own proposal" could not achieve "prospective bidderhood." The Federal Circuit explained that "in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation", *MCI,* 878

---

7. Complaint, Ex. I. In this order, the ALJ determined that under OHA precedent, ostensible subcontractors are not adversely affected by a size determination because they do not have a direct stake in the outcome of the case. Further, the ALJ noted that Eagle Design's singular initiation of the appeal reflected its control of the contract and supported his conclusion that Eagle Design was a joint venturer with Z–Tech.

8. See Tr. Sept. 8, 2004.

9. As applied by the Court in *MCI*, the Brooks Act provided: "(B) the term 'interested party' means, with respect to a contract or proposed contract described in subparagraph (A), an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 40 U.S.C. § 759(f)(9)(B) (Supp. IV 1986).

F.2d at 365 (emphasis in original).[10] *See also, U.S. West Communications Servs. v. United States,* 940 F.2d 622, 627–28 (Fed.Cir.1991) (recognizing that the legislative history of the Brooks Act indicates that the right to bring a bid protest under that statute did not extend to subcontractors); *Information Sys. & Networks Corp. v. United States Dept. of HHS,* 970 F.Supp. 1, 8 (D.D.C.1997) (recognizing that "subcontractors are not intended for protection under CICA.... Though [subcontractor's] economic interest was directly affected by the recompetition, that is not enough. It must be at least an 'offeror.' "). Here, Eagle Design's admission that it had not submitted and does not intend to submit a proposal is fatal to its claim to be an interested party.[11] As this Court recognized in *Gentex Corp. v. United States,* 61 Fed.Cl. 49, 52 (2004), the standing doctrine embraces the general prohibition against a litigant's raising another entity's legal rights. In short, Eagle Design as a subcontractor to an offeror in this procurement is not itself an actual or prospective offeror, and thus not an interested party. Eagle Design lacks standing to bring this post-award bid protest.

## CONCLUSION

Defendant and Intervenor's Motions to Dismiss this action for lack of standing are **GRANTED.** No costs.

---

10. One commentator has argued that the *MCI* decision should be restricted to the Brooks Act and not be extended to the CICA definition of interested party due to the differing text in the two statutes. Frederick W. Claybrook, *Standing, Prejudice, and Prejudging in Bid Protest Cases,* 33 Pub. Cont. L.J. 535, 544 (Spring 2004). The author notes that the Brooks Act definition of interested party encompasses "a contract or proposed contract," whereas CICA's interested party definition covers "a contract or a solicitation or other request for offers described in Paragraph (1)." *Id.* Paragraph (1) defines a protest to be an objection to, inter alia, a "solicitation ... for offers for a contract for the procurement of property or services." The author posits that under CICA, a would-be offeror who could not have submitted an offer in response to an unduly restrictive solicitation but would have done so in a resolicitation with a suitably-revised specification, could be an interested party.

This distinction between the Brooks Act and CICA does not permit this Court to depart from *MCI* in this case, since Eagle Design does not claim that it would have itself been a prospective offeror in any resolicitation and would have been ineligible under the established NAICS size standard.

11. Tr. Sept. 8, 2004. This also vitiates Eagle Design's ability to demonstrate the requisite prejudice to establish standing. Eagle Design's ineligibility as a small business under the NAICS code for this procurement is established, having been fully litigated at SBA and in this Court. Plaintiff has not alleged any error which, if corrected, would have given it a substantial chance of award, since Eagle Design did not itself qualify as a small business, was ineligible to bid, and had no intention to bid other than as Z–Tech's subcontractor.